UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NATIONAL INDEMNITY COMPANY,                )
                                           )        Civil Action No. 08 Civ. 3718 (RWS)
             Plaintiff,                    )        (ECF Case)
                                           )
      vs.                                  )
                                           )
STONEWALL INSURANCE COMPANY AND            )
SEATON INSURANCE COMPANY,                  )
                                           )
             Defendants.                   )
------------------------------------------------------------x


## MEMORANDUM IN SUPPORT OF MOTION
## TO STAY OR DISMISS AND TO COMPEL ARBITRATION


HARGRAVES MCCONNELL &
     COSTIGAN, P.C.
The Graybar Building
420 Lexington Avenue
New York, New York 10170
(212) 218-8760

                -and-

RIKER DANZIG SCHERER
     HYLAND & PERRETTI LLP
550 Fifth Avenue, 49th Floor
New York, New York 10110
(212) 302-6574

Attorneys for Defendants Stonewall
Insurance Company and Seaton
Insurance Company

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

I.      STATEMENT OF FACTS ..................................................................... 3

II.     ARGUMENT ......................................................................................... 8

        A      The Court Should Dismiss or Stay This Action in
               Favor of Arbitration ................................................................. 11

        B.     The Court Should Compel Arbitration .................................... 18

CONCLUSION ................................................................................................ 20

## TABLE OF AUTHORITIES

1.  ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.,
    307 F.3d 24 (2nd Cir. 2002) ...........................................................................13

2.  Castlewood (US), Inc. v. National Indem. Co., 2006 WL 3026039
    (S.D.N.Y. 2006) .............................................................................................4

3.  Conticommodity Servs., Inc. v. Phillip & Lion, 613 F.2d 1222
    (2d Cir. 1980) ..................................................................................16, 18

4.  Green Tree Financial Corp. v. Bazzle, 539 U.S. 444 (2003) ...................13

5.  Hartford Acc. and Indem. Co. v. Swiss Reinsurance America Corp.,
    246 F.3d 219 (2nd Cir. 2001)...................................................................13

6.  Hishon v. King & Spalding, 467 U.S. 69 (1984).......................................8

7.  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002)................13

8.  Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,
    252 F.3d 218 (2nd Cir. 2001).....................................................................12

9.  McMahan Securities Co. L.P. v. Forum Capital Markets L.P.,
    35 F.3d 82 (2nd Cir. 1994)..........................................................................12

10. National Union Fire Insurance Co. v. Belco Petroleum Corp.,
    88 F.3d 129 (2d Cir. 1996) ....................................................................... 2

11. Nat'l Union Fire Ins. Co. v. Belco Petro. Corp.,
    No. 94 Civ. 5205 (TPG), 1995 U.S. Dist. LEXIS 14056
    (S.D.N.Y. Sept. 28, 1995) ...................................................... 15

12. North River Insurance Co. v. Allstate Insurance Co.,
    866 F. Supp. 123 (S.D.N.Y. 1994)........................................... 16

13. Papasan v. Allain, 478 U.S. 265, 286 (1986)....................................9, 14

14. Stamford Holding Co. v. Clark, 2003 U.S. Dist. LEXIS 4542
    (D.Conn 2003) ................................................................................17

15. Sun Micro Med. Techs. Corp. v. Passport Health Communs., Inc.,
    2007 U.S. Dist. LEXIS 56686 (S.D.N.Y July 31, 2007) .........................3

16. Trafalgar Shipping Co. v. Int'l Milling Co., 401 F.2d 568
    (2d Cir. 1968) ................................................................................ 16

## STATUTES AND RULES

Fed. R. Civ. P. 12(b)(1) ............................................................................. ..1

Fed. R. Civ. P. 12(b)(6) ............................................................................. ..1

9 U.S.C. § 2 ................................................................................................ 11

9 U.S.C. § 3 ................................................................................................ 11

9 U.S.C. § 4 ................................................................................................ 18

Defendants Stonewall Insurance Company ("Stonewall") and Seaton Insurance Company ("Seaton") (collectively "the Companies") respectfully submit this memorandum of law in support of their motion under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and Sections 3 and 4 of the Federal Arbitration Act ("FAA") to: (i) dismiss the complaint of National Indemnity Company ("NICO"), or stay this action in favor of arbitration; and (ii) compel NICO to arbitrate.

This memorandum is accompanied by the July 23, 2008 Declaration of James McConnell.

## PRELIMINARY STATEMENT

In January 2006 NICO began a pair of arbitrations, one against Stonewall and one against Seaton (the "2006 Arbitrations"). NICO and Seaton and Stonewall stipulated to the scope of the 2006 Arbitrations. In each, NICO, on the one hand, and Stonewall and Seaton, respectively, on the other hand, agreed to stipulations reciting that, as to the 2006 Arbitrations:

> There is no claim that the Reinsurance Agreements are ambiguous or were fraudulently induced.

> There is no claim against NICO sounding in fraud.

The 2006 Arbitrations were concluded with awards issued in September 2007; the awards were subsequently confirmed without opposition.

On March 20, 2008, Stonewall and Seaton each demanded arbitration against NICO, asserting in those demands claims that the Reinsurance Agreements were fraudulently induced (the "2008 Fraud Arbitrations").

NICO named its party-appointed arbitrator for each of the 2008 Fraud Arbitrations, but otherwise refused to participate. Instead, it filed the instant complaint,

the gravamen of which is that the relief sought by the 2008 Fraud Arbitrations violates the awards in the 2006 Arbitrations.

NICO's complaint should be seen for what it is: an attempt to preempt arbitration by masquerading an arbitrable defense as an affirmative claim for relief. The Court should reject that attempt for two reasons.

First, the fraud claims in the arbitrations that NICO seeks to enjoin by this action (and any purported defenses of NICO to those claims) are within the scope of broad arbitration agreements between the parties providing:

> All matters in difference between the Reinsured and the Reinsurer in relation to this Reinsurance, including its formation and validity, and whether arising during or after the period of this Reinsurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out . . .

Accordingly, the claims must be arbitrated.

Second, NICO is not permitted to avoid arbitration by recasting an arbitrable preclusion defense as a claim for relief. NICO's asserted affirmative defense is only a dispute over the preclusive effect, if any, of the 2006 Arbitrations on the 2008 Fraud Arbitrations. That dispute is itself subject to arbitration; it must be resolved in the arbitrations NICO seeks to enjoin. That is because the "preclusive effect of [a] prior, related arbitration [on a current arbitration] . . . must be determined by the arbitrator in the current arbitration, rather than by the court." National Union Fire Insurance Co. v. Belco Petroleum Corp., 88 F.3d 129, 131 (2d Cir. 1996) (emphasis added).

Accordingly, the Court should dismiss this action and require NICO to arbitrate.

2

# I.

## STATEMENT OF FACTS

The allegations of the complaint are largely unremarkable. That is not to say that they are in all respects accurate; to the contrary, in certain respects they are materially inaccurate. Those inaccuracies are not cataloged on this motion to dismiss.

What is remarkable about the complaint, however, is NICO's decision to omit facts (drawn almost entirely from documents exhibited to or referenced by the complaint) that underscore the conclusion that NICO must arbitrate its preclusion defense. These omissions include the following. [1]

Each Panel's authority in the 2006 Arbitrations was limited solely to the matters expressly submitted to them by the parties:

> The Arbitration Tribunal shall make its decision solely as to the issue presented in the notice of arbitration within 60 days following the termination of the hearings.

Stonewall Reinsurance Agreement (referenced at ¶ 7, 9-11 of the Complaint) and Seaton Reinsurance Agreements (referenced at ¶ 8, 9-11 of the Complaint); McConnell Dec., Exhs. A and B.

Neither of NICO's January 4, 2006 demands for arbitration against the Companies in the 2006 Arbitrations (referenced at ¶ 12 of the Complaint) raised a fraud claim, nor sought any finding in relation to fraud. NICO's demand against Stonewall states:

---

[1]     "[W]hile courts generally do not consider matters outside the pleadings, they may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a 12(b)(6) motion." Sun Micro Med. Techs. Corp. v. Passport Health Communs., Inc., 2007 U.S. Dist. LEXIS 56686, * 7 (S.D.N.Y July 31, 2007) quoting Garcia v. Lewis, No. 05 Civ. 1153 (SAS), 2005 U.S. Dist. LEXIS 11955, 2005 WL 1423253, at *3 (S.D.N.Y. June 16, 2005).

> ...NICO hereby demands arbitration against Stonewall under Article 14 of the aggregate reinsurance agreement between NICO and Stonewall. NICO seeks in this proceeding both access to all of Stonewall's books and records that NICO has already requested and all other relief deemed fit and property by the Panel.

Copies of NICO's January 4, 2006 demands for arbitration against Stonewall and against Seaton in the 2006 Arbitrations are annexed to the McConnell Declaration as Exhibits C and D (NICO's January 4, 2006 demand for arbitration against Seaton in the 2006 Arbitrations is essentially identical and is exhibited but not reprinted).

Neither of NICO's May 22, 2006 amended demands for arbitration against the Companies in the 2006 Arbitration (referenced at ¶ 13 of the Complaint) raised a fraud claim, nor sought any finding in relation to fraud. NICO's amended demand against Stonewall states:

> In addition to demands previously made in the January 4, 2006 demand for arbitration, NICO hereby further requests that the Panel make the following findings:
>
> That Castlewood, as agent of Stonewall and as Stonewall's putative administrator of the Reinsurance Agreement, may properly be added as a respondent to this arbitration.[2]
>
> That, pursuant to section 11.D of the Reinsurance Agreement, as well as other relevant sections therein, Castlewood is not authorized to serve as Claims Servicer or otherwise manage any claims for which Stonewall seeks coverage under the Reinsurance Agreement.

Copies of NICO's May 22, 2006 amended demands for arbitration against Seaton, and against Stonewall, in the 2006 Arbitrations are annexed to the McConnell Declaration as Exhibits E and

---

[2]    NICO's over-reaching attempt to add Castlewood, Inc. as a respondent in the 2006 Arbitrations was rejected by Judge Karas. Castlewood (US), Inc. v. National Indem. Co., 2006 WL 3026039 (S.D.N.Y. 2006).

F (NICO's May 22, 2006 amended demand for arbitration against Seaton in the 2006

Arbitrations is essentially identical and is exhibited but not reprinted).

Neither of the Companies' respective June 22, 2006 counter-demands for

arbitration against NICO in the 2006 Arbitrations (referenced at ¶ 14 of the complaint) raised

a fraud claim, nor sought any finding in relation to fraud. Stonewall's counter-demand stated:

> Stonewall hereby requests that the Panel declare Stonewall is
> entitled to the following relief:
>
> A Panel order confirming that Stonewall is its own Claim Servicer
> pursuant to Section 4.F and 11.D of the Reinsurance Agreement;
>
> A Panel order directing NICO, and its agent Cavell USA, Inc.
> ("Cavell"), to cease and desist any involvement in claims handling
> for Stonewall policies;
>
> A Panel order confirming that Stonewall has the inherent right to
> negotiate the settlement of claims and communicate directly with
> policyholders and that NICO shall reimburse Stonewall for any
> settlements;
>
> A panel order directing NICO and Cavell to cease and desist any
> involvement in the collection of any third-party reinsurance ceded
> by Stonewall; and
>
> A panel order requiring NICO to produce all communications with
> Cavell relating to the management or servicing of claims that
> potentially implicate coverage under the Reinsurance Agreement.
>
> In addition, Stonewall requests that the Panel find that NICO has
> breached its duty of utmost good faith and intentionally interfered
> with Stonewall's business relations during the course of the
> Reinsurance Agreement over the past five years . . .

Copies of the Companies' respective June 22, 2006 counter-demands for arbitration against

NICO in the 2006 Arbitrations are annexed to the McConnell Declaration as Exhibits G and H

(Seaton's June 22, 2006 counter-demand for arbitration against NICO in the 2006 Arbitrations is

essentially identical to Stonewall's and is exhibited but not reprinted).

To ensure that there was no doubt about the scope of the arbitrations and that fraud claims were not included in the 2006 Arbitrations, on May 3, 2007, <u>the parties to each of the 2006 Arbitrations stipulated that those Arbitrations involved no claim against NICO sounding in fraud</u>, including specifically fraud in the inducement during the formation of the reinsurance agreements in 1999 and 2000.

The May 3, 2007 stipulations, presented to the respective panels by the very counsel representing NICO here, provided that, as to the 2006 Arbitrations:

> There is no claim that the Reinsurance Agreements are ambiguous or were fraudulently induced.
>
> There is no claim against NICO sounding in fraud.

Copies of the May 3, 2007 stipulations between NICO and Stonewall, and NICO and Seaton, respectively, are annexed to the McConnell Declaration as Exhibits I and J.

The stipulations were provided to the panels in the 2006 Fraud Arbitrations under cover of a letter from NICO's counsel in this action, which recited in part that: "[t]his letter has been reviewed and approved by both parties, who are pleased to report that an agreement has been reached concerning Stonewall's causes of action in the above-referenced arbitration," and "[t]his letter has been reviewed and approved by both parties, who are pleased to report that an agreement has been reached concerning Seaton's causes of action in the above-referenced arbitration." Copies of those letters are likewise exhibited to the McConnell Declaration at Exhibits I and J.

The awards in the 2006 Arbitrations: (i) granted NICO's "request that it continue as claims servicer;" (ii) ordered that "NICO is to be paid fees for this service according to the terms of the [reinsurance contracts];" and (iii) granted "NICO's request

that it be authorized to collect reinsurance from [Seaton and Stonewall's] reinsurers." Copies of the Awards are annexed to the Complaint as Exhibits A and B.

All other claims and demands for relief by either party were denied. The Awards did not enjoin any conduct of either of the Companies going forward.

Because the parties had stipulated that, for purposes of the 2006 Arbitrations: "[t]here is no claim that the Reinsurance Agreements are ambiguous or were fraudulently induced and [t]here is no claim against NICO sounding in fraud," unsurprisingly, the awards in those arbitrations do not address the issue of whether the Reinsurance Agreements between NICO and each of the Companies were fraudulently induced.

Finally, the complaint omits any allegation that the claims of fraudulent inducement advanced in the 2008 Fraud Arbitrations were among the issues previously presented to either panel in the 2006 Arbitrations.

On March 20, 2008, the Companies commenced the 2008 Fraud Arbitration. By their respective arbitration demands, the Companies for the first time seek rescission of their reinsurance contracts with NICO based on NICO's fraud in the inducement of those contracts.

Stonewall's March 20, 2008 demand for arbitration in the 2008 Fraud Arbitration provides:

> By and through this letter, Stonewall hereby demands arbitration against National Indemnity Company ("NICO") pursuant to Article 14 of the Aggregate Reinsurance Agreement between NICO and Stonewall more fully identified as Contract No. RA 1385 (the "Treaty"). In this arbitration, Stonewall shall seek a panel order rescinding the Treaty on the ground that it was induced by fraud by NICO, and an award of such other and further relief that the arbitration panel deems equitable and appropriate.

Copies of the Companies' March 20, 2008 demands for arbitration of their respective fraud claims against NICO are annexed to the McConnell Declaration as Exhibits K and L. (Seaton's March 20, 2008 demand for arbitration against NICO in the 2008 Fraud Arbitration is essentially identical to Stonewall's and is exhibited but not reprinted).

As noted above, the Reinsurance Agreements each contain a broad arbitration agreement, providing in part that:

> All matters in difference between the Reinsured and the Reinsurer in relation to this Reinsurance, including its formation and validity, and whether arising during or after the period of this Reinsurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out . . .

McConnell Dec.; as Exhs. A and B.

Notwithstanding the breadth of the relevant arbitration clauses, NICO filed its complaint 29 days later, on April 18, 2008.

## II.

## ARGUMENT

As noted, the gravamen of NICO's complaint is that the relief sought by the 2008 Fraud Arbitrations violates the awards in the 2006 Arbitrations. The complaint is premised upon the implication – never actually alleged – that the 2006 Arbitrations included the fraud claims now asserted in the 2008 Fraud Arbitration. The complaint conspicuously lacks any factual allegation regarding the specific manner in which the 2008 Fraud Arbitrations violate the 2006 Arbitration Awards or the Judgments confirming them. Instead, at paragraphs 29-30, the complaint sweepingly and conclusorily[3] alleges that:

---

[3]    A court must accept as true all well-pled allegations in a complaint. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). A court is "not bound to accept as true a legal conclusion

> Despite consenting to confirmation of the Awards, Seaton and Stonewall have violated the directions contained in the Awards and the Judgments of this Court confirming the Awards by interfering with NICO's exclusive right to service Seaton's and Stonewall's claims, and also by interfering with NICO's exclusive right to collect amounts due from Seaton's and Stonewall's third party reinsurers.

> Seaton and Stonewall violated the Awards, and the Judgments confirming the Awards, on March 20, 2008 <u>by each serving upon NICO a written demand</u> seeking to re-arbitrate its claim for rescission of its respective Reinsurance Agreement with NICO (the "Re-Arbitration Demands").

(Complaint, ¶¶ 28-29) (emphasis supplied).[4]

And that is it. According to NICO, the service of the demands in the 2008 Fraud arbitrations – demanding arbitration of the claims that NICO and the Companies explicitly excluded from the 2006 Arbitration – violates the awards issued in the 2006 Arbitrations. NICO never says "how" or "why" that is so.

To do so, NICO would have to overcome (or at least to have addressed in its Complaint): (i) the limited scope of NICO's January 2006 arbitration demands in the 2006 Arbitrations; (ii) the limited scope of NICO's May 2006 amended arbitration demands in the 2006 Arbitrations; (iii) the limited scope of the Companies' June 2006 counter-demands for arbitration in the 2006 Arbitrations; and (iv) the parties' May 2007 stipulation that the submissions to the 2006 Arbitration Panels included " no claim that the Reinsurance Agreements are ambiguous or were fraudulently induced; and "no claim against NICO sounding in fraud."

---

couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

[4]     Unsurprisingly, the complaint also omits that rescission was only an alternative <u>remedy</u> requested by the Companies for their respective <u>claims</u> of <u>material breach of contract</u>. Copies of the Companies' proposed awards in the 2006 Arbitrations are annexed to the McConnell Declaration at Exhibits M and N.

The first three of the foregoing, of course, make plain that neither NICO nor either of the Companies presented to either panel in the 2006 Arbitrations the issue of whether the Reinsurance Agreements were fraudulently induced; the fourth demonstrates, that to the contrary, both NICO and the Companies agreed that the issue of whether the Reinsurance Agreements were fraudulently induced was not presented to either panel in the 2006 Arbitrations. That NICO elected to bring its complaint but omit these facts speaks for itself.

Notwithstanding NICO's clunky characterization of the demand in the 2008 Fraud Arbitrations as the "Re-Arbitration Demands," because NICO and the Companies specifically excluded fraud claims from the 2006 Arbitrations, no arbitration panel has ever been presented with the Companies' claims of fraud in the inducement.

Under controlling authority in this Circuit, however, this Court need never consider these issues. This Court need not -- indeed should not -- reach the question of whether the Companies' claims that the Reinsurance Agreements were fraudulently induced were included in the 2006 Arbitration. Instead, for two reasons: (i) the Court should dismiss or stay this action; and (ii) require NICO to arbitrate the claims asserted in the 2008 Fraud Arbitrations (including its defense of preclusion).[5]

First, the claims in the 2008 Fraud Arbitrations that NICO seeks by this action to enjoin are within the scope of broad arbitration agreements between the parties, and so must be arbitrated.

Second, NICO's asserted affirmative defense (credited, for purposes of this motion, despite the documentary evidence of its falsity), is still no more than a

---

[5]    NICO's alternative request (for "remand" to the 2006 Arbitration Panels) is likewise flawed. Those Panels have been discharged and disbanded. As cited below, controlling authority makes plain that determination of NICO's assertion of preclusion should be referred to the arbitrators in the 2008 Fraud Arbitrations.

dispute over the preclusive effect, if any, of the 2006 Arbitrations on the 2008 Arbitrations. That dispute is itself subject to arbitration and its resolution is a question for the respective panels in the 2008 Fraud Arbitrations.[6]

**A.    The Court Should Dismiss or Stay
       This Action in Favor of Arbitration**

Section 2 of The Federal Arbitration Act, entitled "Validity, irrevocability, and enforcement of agreements to arbitrate," provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Section 3, entitled "Stay of proceedings where issue therein referable to arbitration," provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

---

[6]    NICO's claims that the Companies violated the arbitration awards by interfering with NICO's claims servicing rights and third-party reinsurance collection rights are red-herrings. Even if true (and NICO's Complaint provides no factual support for the self-serving conclusion), the claims provide the Court with no basis to enjoin the 2008 Fraud Arbitrations.

In such a circumstance:

> . . . a district court must stay proceedings if satisfied that the parties
> have agreed in writing to arbitrate an issue or issues underlying the
> district court proceeding. The FAA leaves no discretion with the
> district court in the matter . . . Furthermore, we are mindful of the
> Supreme Court's admonition that while "the FAA does not require
> parties to arbitrate when they have not agreed to do so," we must
> construe "any doubts concerning the scope of arbitrable issues . . .
> in favor of arbitration.

McMahan Securities Co. L.P. v. Forum Capital Markets L.P., 35 F.3d 82, 85-86 (2nd Cir. 1994)

(internal citations omitted).

In determining whether a dispute falls within the scope of the parties' agreement

to arbitrate, a court should first classify the particular clause as either broad or narrow. Louis

Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218 (2nd Cir. 2001):

> No fixed rules govern the determination of an arbitration clause's
> scope; while very expansive language will generally suggest a
> broad arbitration clause, see, e.g., Collins, 58 F.3d at 18 ("Any
> claim or controversy arising out of or relating to this agreement
> shall be settled by arbitration."), we have also found broad clauses
> when examining phrasing slightly more limited, see, e.g., Abram
> Landau Real Estate v. Bevona, 123 F.3d 69, 71 (2d Cir.1997)
> ("Contract Arbitrator shall have the power to decide all differences
> arising between the parties to this agreement as to interpretation,
> application or performance of any part of this agreement.").

Dreyfus Negoce S.A., 252 F.3d at 225. Where the arbitration clause is broad, "there arises a

presumption of arbitrability." Id. at 224.

In this case, there can be no legitimate dispute as to the breadth of the

relevant arbitration clauses. The clauses require arbitration of "all matters in difference

between the Reinsured and the Reinsurer in relation to this Reinsurance, including its formation

and validity, and whether arising during or after the period of this Reinsurance . . . (emphasis

supplied).

These are broad clauses. They require arbitration of the Companies' claims that the reinsurance agreements were fraudulently induced. See ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24 (2nd Cir. 2002) (broad arbitration clause requires arbitration of claim of fraud in the inducement); Hartford Acc. and Indem. Co. v. Swiss Reinsurance America Corp., 246 F.3d 219 (2nd Cir. 2001) (broad clause triggers the rule that an "order to arbitrate a particular claim should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute").

NICO is required to assert its affirmative defense to the 2008 Fraud Arbitrations in the 2008 Fraud Arbitrations because: "the preclusive effect of a prior, related arbitration between the parties must be determined by the arbitrator in the current arbitration, rather than by the court." Belco, supra, 8 F.3d at 131 (2d Cir. 1996).

The rule of Belco is in accord with the rationale underpinning Green Tree Financial Corp. v. Bazzle, 539 U.S. 444 (2003) and Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002). In Howsam, the Court noted that:

> The phrase "question of arbitrability" has a limited scope, applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter. But the phrase is not applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the question -" 'procedural' questions which grow out of the dispute and bear on its final disposition," and "allegation [s] of waiver, delay, or a like defense to arbitrability.

537 U.S. at 79-80 (emphasis supplied).

Likewise, in Green Tree, Justice Breyer's plurality opinion explained:

> In certain limited circumstances, courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-

13

related matter (in the absence of "clear and unmistakable" evidence to the contrary). . . . They include certain gateway matters, such as [1] whether the parties have a valid arbitration agreement at all or [2] whether a concededly binding arbitration clause applies to a certain type of controversy.

The question here -- whether the contracts forbid class arbitration -- does not fall into this narrow exception. It concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties. . . . .

539 U.S. at 252-53.

Here, the Companies' claims of fraud in the inducement do not implicate a gateway matter. First, NICO does not contend the parties lack a valid agreement to arbitration. Second, although NICO concludes that the 2008 arbitration demands do not seek the "resolution of an arbitrable dispute," (Complaint, ¶ 31)[7] the broad scope of the arbitration agreements clearly covers the current demands.

In Belco, the insurers were among the underwriters of a confiscation, expropriation and deprivation policy issued to the insured which provided for up to 90% of any covered loss up to $200 million. Id. Upon seizure of the insured's oil exploration and development operations, the insured filed a claim for the full limit of the policies. Id. In response, the insurers rescinded the policies and commenced arbitration under the policy seeking rescission. Id. In the arbitration, the insured counterclaimed for the full limits of coverage. Id. The arbitration panel issued an award, denying the insurers' claim for rescission and awarding $144.9 million, plus interest, which was subsequently confirmed in the Supreme Court of New York. Id.

---

[7]     The Court is not required to accord any weight to that conclusion. Papasan v. Allain, 478 U.S. 265, 286 (1986).

The insured allegedly was also insured under an expropriation endorsement in a policy issued by another insurer (the "Seahawk Policy"), under which the insured recovered $2.925 million for loss of certain vessels.[8] Four and one-half years after confirmation of the award from the initial arbitration, an insurer, and party to the initial arbitration, commenced another arbitration against the insured under the same policy under which the initial arbitration had been commenced. Id.

In this second arbitration, the insurer sought to recoup a portion of the insured's proceeds under the Seahawk Policy. Id. The insured commenced a declaratory judgment action in the United States District Court for the Southern District of Texas seeking a declaration that the second arbitration was barred by res judicata. Id. at 131-32. The insurer likewise sought relief from this Court in the form of compelling arbitration, and, ultimately, the cases were consolidated in this Court. Id. at 132.

The insured argued to the trial court that the issue of the insurer's claim to proceeds under the Seahawk Policy had already been decided in the initial arbitration and that "the preclusive effect of the prior arbitration award had to be determined by the court and not by the arbitrator in the pending arbitration." Id. This Court held, however, that "under federal law the arbitrator, not the court, should decide the issue." Nat'l Union Fire Ins. Co. v. Belco Petro. Corp., No. 94 Civ. 5205 (TPG), 1995 U.S. Dist. LEXIS 14056, *6 (S.D.N.Y. Sept. 28, 1995) (emphasis added).

The Second Circuit affirmed the holding on appeal. Belco, supra, 88 F.3d at 136.

---

[8]    The Belco court noted that: "[t]here was apparently some discussion in the [initial] arbitration of the existence of [the Seahawk Policy] and the possibility of [the insured's] recovery under it, although the parties dispute the extent and content of that discussion." Id.

15

First, the Court found that the arbitration clause (providing for arbitration of "[a]ll disputes which may arise under or in connection with this policy . . .") was "broad enough" to cover the two components of the underlying disputes between the parties: (i) the insurer's right to recover from the insured; and (ii) the insured's argument that the insurer is precluded from doing so on the basis of the initial arbitration.

The Court held that the insured's "claim of preclusion is a legal defense" and, therefore, "it is itself a component of the dispute on the merits." Id. (emphasis added). The Court noted that preclusion is "as much related to the merits as such affirmative defenses as a time limit in the arbitration agreement or laches, which are assigned to an arbitrator under a broad arbitration clause." Id. at 136 (citing Conticommodity Servs., Inc. v. Phillip & Lion, 613 F.2d 1222, 1226 (2d Cir. 1980), 613 (time limitation in arbitration agreement), and Trafalgar Shipping Co. v. Int'l Milling Co., 401 F.2d 568, 571-72 (2d Cir. 1968) (laches). See also North River Insurance Co. v. Allstate Insurance Co., 866 F. Supp. 123 (S.D.N.Y. 1994) (holding that the issue-preclusive effect of a prior arbitration award is a defense to be heard and decided by the currently empanelled arbitrators):

> When one party to a dispute seeks to stay the other party's demand for arbitration by raising various defenses to arbitration before a district court, there is a considerable temptation for the court to pass on the validity of such defenses rather than to refer their resolution to an arbitrator. Determining the merits of such defenses may often appear to be a simple task that should not be delayed or deferred, and judges are, by training and temperament, prepared to decide the issue that come before them.

> These reactions, while understandable, are at odds with the policy considerations embodied in the Federal Arbitration Act, which favor the enforcement of arbitration agreements.

Id. at 129-30 (quoting Conticommodity Servs., Inc. v. Phillip & Lion, 613 F.2d 1222, 1224 (2d Cir. 1980)).

Belco is followed in this Circuit. See Stamford Holding Co. v. Clark, No. 3:02 CV 1236 (CFD), 2003 WL 1597206, *4-5 (D.Conn. March 25, 2003) (citing Belco and United States Fire Insurance Company v. National Gypsum Company, 101 F.3d 813 (2d Cir. 1996) and noting that, in Belco, "the Second Circuit held that an arbitration agreement and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., required that the preclusive effect of a prior arbitration be arbitrated"). In Stamford Holding, supra, the United States District Court for the District of Connecticut gathered cases within and without the Circuit that have reached a like result:

> Other circuits and district courts have reached similar conclusions. In United Computer Systems, Inc. v. AT&T Corporation, 298 F.3d 756 (9th Cir. 2002), the Ninth Circuit held that, notwithstanding the defendant's "forceful argument that this case is nothing more than a naked attempt to re-litigate claims that were finally laid to rest in [the prior arbitration]," id. at 763, the broad language of the arbitration clause and the policies of the FAA required the preclusive effect of the prior arbitration to be arbitrated, id. at 766. See also Chiron Corp. v. Ortho Diagnostic Systems Inc., 207 F.3d 1126, 1132 (9th Cir. 2000). In North River Insurance Company v. Allstate Insurance Company, 866 F. Supp. 123 (S.D.N.Y. 1994), then-district Judge Sotomayor noted the relevant arbitration clause's expansive reach and the policies of the FAA, and held that the "question of whether to apply collateral estoppel . . . is no different from an adjudication by the arbitrators of any other matter in dispute between the parties." Id. at 129. Judge Sotomayor also noted that the confirmation of the arbitration award by a state court did not affect the issue. Id. Accordingly, Judge Sotomayor held that the preclusive effect of the prior arbitration must be decided by arbitrators, rather than the court. Id. at 129-30 (citing Transit Mix Concrete Corp. v. Local Union No. 282, International Brotherhood of Teamsters, etc., 809 F.2d 963, 965 (2d Cir. 1987));

> see also Philadelphia Electric Company v. Nuclear Electric Ins. Ltd., 845 F. Supp. 1026, 1029 (S.D.N.Y. 1994).

Stamford Holding, supra, at *6.

NICO's claims are controlled by Belco. NICO's implication that the Companies' claims of fraud in the inducement have been previously arbitrated is an analog of Belco's contention that the issues relating to its Seahawk coverage had been previously arbitrated. Belco requires that the Court dismiss or stay Counts I and II of NICO's action pursuant to Section 3 of the FAA.

**B.    The Court Should Compel Arbitration**

Whether the Court chooses to stay or dismiss this proceeding, it should also issue an order compelling NICO to arbitrate in the proceedings that the Companies commenced on March 20, 2008 and deny the alternative relief sought in Count III of NICO's Complaint.

Section 4 of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

This "statutory language is straightforward." Conticommodity Servs., Inc. v. Phillip & Lion, 613 F.2d 1222, 1224 (2d Cir. 1980). There is no question whether: (i) the parties made an agreement to arbitrate; or (ii) NICO is refusing to arbitrate. NICO seeks to

derail the 2008 Fraud Arbitrations on the ruse that a preclusion defense is a non-arbitrable claim.

Nor is there any question that determination of that defense is a matter for the panels in the 2008 Fraud Arbitrations. As the Second Circuit stated in Belco: "The district court held that the preclusive effect of a prior, related arbitration between the parties <u>must be determined by the arbitrator in the current arbitration</u>, rather than by the court. For the reasons stated below, we affirm." Belco, supra, at 131. (emphasis supplied)

Accordingly, the Court should decline consideration of the merits of NICO's defenses and compel NICO to arbitrate the Companies fraud claims (and, if NICO chooses, its preclusion defenses) in the 2008 Fraud Arbitrations.

## CONCLUSION

For the reasons stated above, the Companies respectfully request an order under FRCP 12(b)(1) and 12(b)(6), and pursuant to 9 U.S.C. §§ 3 and 4 of the Federal Arbitration Act, dismissing or staying the present action and compelling NICO to participate in the 2008 Fraud Arbitrations.

Dated: New York, New York
      July 23, 2008

Respectfully submitted,

By: _____
     Daniel Hargraves (dhargraves@hm-law.com)
     James McConnell (jdmconnell@hm-law.com)

HARGRAVES MCCONNELL & COSTIGAN, P.C.
The Graybar Building
420 Lexington Avenue, Suite 2101
New York, New York 10170
(212) 218-8760

     -- and --

RIKER DANZIG SCHERER HYLAND
     & PERRETTI LLP
500 Fifth Avenue, 49th Floor
New York, New York 10110
(212) 302-6574

Attorneys for Defendants